**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **Equal Employment Opportunity** | * | |
| **Commission** | * | **Civil Action No. 13-1712** |
| **v.** | * | |
| | * | |
| **Performance Food Group, Inc.** | * | |

**MEMORANDUM**

The Equal Employment Opportunity Commission ("EEOC") alleges that Performance

Food Group, Inc. ("PFG") has engaged in a pattern or practice of gender discrimination in its

selection of operative positions[1] in its warehouses.  PFG has filed a motion to strike certain

testimony and exhibits that the EEOC presents as part of its motion for summary judgment.  The

motion has been fully briefed and no oral argument is necessary.  For the reasons stated below,

the court will grant in part and deny in part the motion to strike.

**STANDARD OF REVIEW**

On a motion for summary judgment, "[t]he court may consider materials that would

themselves be admissible at trial, and the content or substance of otherwise inadmissible

materials where the 'the party submitting the evidence show[s] that it will be possible to put the

information ... into an admissible form.'"  *Humphreys & Partners Architects, L.P. v. Lessard*

*Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015), as amended (June 24, 2015) (citation omitted).

"If the nonmovant objects to the court's consideration of 'material cited to support or dispute a

fact,' Fed. R. Civ. P. 56(c)(2), the movant has the burden 'to show that the material is admissible

---

[1] "Operatives" are defined by the EEOC as "[w]orkers who operate machine or processing equipment or perform other factory-type duties of intermediate skill level which can be mastered in a few weeks and require only limited training." Job Patterns for Minorities and Women in Private Industry: A Glossary, https://www.eeoc.gov/eeoc/statistics/employment/jobpat-eeo1/glossary.cfm (last accessed March 12, 2020).  The specific job titles at issue in this litigation are: (1) truck drivers; (2) selectors; (3) forklift operators; (4) transportation or warehouse supervisors; and (5) an "other warehouse" category of miscellaneous nonselector warehouse jobs.

as presented or to explain the admissible form that is anticipated,' Fed. R. Civ. P. 56 advisory committee's note." *Id.* at 538–39.

## ANALYSIS

### I.     Testimony of Non-Designated Class Members

In its motion, the EEOC presents declarations from 36 class members[2] who were not designated by the EEOC as one of the 40 class members who could testify at the Phase One trial. PFG argues that testimony from these non-designated class members is inadmissible.

The first procedural order (ECF 39) allowed PFG "to take a deposition of those class members whom EEOC designates as persons whose testimony may be presented live or by deposition transcript or deposition videotape in a First Phase trial." (*Id.* at 2–3).[3] The order also states that "[t]he EEOC may not present testimony of class member witnesses not so designated." *Id.* at 2 n. 5. The first procedural order, therefore, limits the testimony of class members that the EEOC can present at the Phase One trial to the forty class members it designated. The testimony of non-designated class members, including the testimony of the non-designated class members presented in the EEOC's motion for summary judgment, would not be admissible at trial. Therefore, the EEOC may not use the testimony to support its motion for summary judgment.

The EEOC argues that the first procedural order is similar to a pretrial order and should be altered to prevent manifest injustice. In determining whether to amend a final pretrial order, courts consider "(1) prejudice or surprise to the party opposing trial of the issue; (2) the ability of

---

[2] PFG lists 37 individuals, but according to the EEOC, one of the individuals who PFG claims is a non-designated class member, Bianca Arnold, was hired as a selector, and therefore is not a class member. The 40-witness limit does not apply to non-class members. As PFG does not respond to this argument in its reply, the court will not strike the declaration of Arnold.

[3] The case is bifurcated into two phases. (ECF 39). Phase One, which the case is currently in, is intended to resolve the EEOC's pattern or practice claim and all issues pertaining to the claim made on behalf of Julie Lawrence. (ECF 37, Memorandum and Order Re: Bifurcation 12–13). If necessary, the case will then proceed to Phase Two to resolve the specific individual claims. (*Id.* at 13).

that party to cure any prejudice; (3) disruption to the orderly and efficient trial of the case by inclusion of the new issue; and (4) bad faith by the party seeking to modify the order." *Goodwin v. Cockrell*, No. 4:13-CV-199-F, 2014 WL 6630105, at *4 (E.D.N.C. Nov. 21, 2014)[4] (citing *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1223 (10th Cir. 2000) and *Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 188 (4th Cir.1994)). Here, the prejudice to PFG would be great. PFG did not expect non-designated class members to testify at the Phase One trial and accordingly did not take depositions of the non-designated class members whose testimony the EEOC now seeks to present. The EEOC argues that there is no prejudice to PFG because the first procedural order allowed PFG to take up to 40 additional depositions of non-designated class members, and PFG knew the identities of the non-designated class members. PFG, however, was justified in not taking additional depositions of class members that could not testify at the Phase One trial. In order to cure any prejudice, PFG would need to be allowed to depose these individuals, which would further delay these already lengthy proceedings.[5] Therefore, the court will not amend the first procedural order.

Additionally, the declarations of the non-designated witnesses are not rebuttal testimony. The EEOC argues that these declarations rebut PFG's contention that women withdrew their applications at a higher rate than men, including because women were unaware that the positions at PFG require much heavier lifting than positions available with other warehouse and trucking companies. The EEOC contends that the declarations rebut the argument because they

---

[4] Unreported cases are cited for the soundness of their reasoning, not for any precedential value.

[5] *Reich v. S. Maryland Hosp., Inc.*, 43 F.3d 949 (4th Cir. 1995) is distinguishable. First, *Reich* involved an FLSA action, not a pattern or practice claim. Second, the court in *Reich* found that more witnesses were needed for a more precise determination of back wages, (*id.* at 952), which is not at issue in this case, at least at this stage. Third, in *Reich*, the class included various positions and departments, and there "were several departments for which no employee testimony was produced by the Secretary on missed lunches, including Nursery, Laboratory (Hematology), Laboratory (Microbiology), Blood Bank, Occupational Therapy, and Community Relations." *Id.* at 952. In contrast, the case here involves only five job groups, and while the gender discrimination is alleged to have occurred at approximately 20 OpCos over an eight-year period, the EEOC appears to have been able to adequately represent the different locations, time periods, and positions with the forty class members it designated.

demonstrate "that gender bias is the true cause for the disparity in offer rates." (ECF 286, Opp'n to Mot. to Strike at 5). This, however, is the same as what the EEOC must prove in its case in chief; does not directly address the withdrawal of applications; and is the kind of testimony that the first procedural order was meant to limit.[6]

Therefore, the court will strike the declarations and testimony from the following witnesses:

> Peggy Arceneaux; Ronni Ardoin; Rose Atkins; Cynthia Brewer; Cheryl Brown; Frances Buchanan; Kandies-Crystal Canfield[7]; Sircreener Davis; Magnolia Doerr; Mona Fondren; Brandi Grayson; Lowanda Hamilton; Deborah Harris; Michelle Hodge; Tammy Hulsey; Nikia Huggins-Huntley[8]; Tausha Jackson; Cherese Jenkins; Anna Johnson; Ashley Maljevac; Roberta Martinez; Sandra Needham[9]; Cindy Patrick; Kelly Powell; Cassandra Price; Teresa Rangel; Christy Rivera; Irma Rossett; Melody Sholunas; Latonya Simpson; Consuelo Socarras; Nevetta Todd; Barbara White; Hattie Wilson; Sabrina Witherspoon; and Ladonna Womack.

## II.     Hearsay

"Hearsay" means a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Civ. P. 801(c). Statements are not hearsay if the statement is offered against an opposing party and, *inter alia*, "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed[.]" *Id.* 801(d)(2)(D).

### A.  Statements by Interviewers and Coworkers

PFG seeks to strike six statements[10] alleging they are hearsay.

---

[6] This case is unlike *Pugh v. Louisville Ladder, Inc.*, to which the EEOC cites, as that case regarded whether a rebuttal expert needed to testify during the plaintiff's case in chief, or whether the testimony could be saved for rebuttal. 361 F. App'x 448, 458–59 (4th Cir. Jan. 5, 2010). The issue here, though, is not about the "mode and order of interrogating witnesses," Fed. R. Evid. 611(a), but whether the testimony is rebuttal testimony such that it is not subject to the limits of the first procedural order.

[7] PFG spells this applicant's name in its motion as "Candfield."

[8] PFG refers to this applicant in its motion only by her last name.

[9] PFG spells this applicant's name in its motion as "Neeham."

[10] The statements relating to Gardner's rebuttal letter (referenced in SOF ¶ 91) will be addressed *infra*. PFG seeks to exclude statements from declarations that the court has already stricken as being from non-designated witnesses, and

1. Peckskamp's alleged statement that "women can't do this job (Warehouse work)" and, "Why would we waste our time bringing in females?" as recounted by CCF[11] Transportation Manager Bob Schreuer in his affidavit. (EEOC Statement of Facts ("SOF") ¶ 63; ECF 236-22, EEOC Mot. for Summary Judgment, Ex. 20, Schreuer Aff. ¶ 5).

These statements are not offered for the truth of the matter asserted, as the EEOC obviously does not contend that "women can't do this job" and it would be a waste of time to hire women. Rather, they are offered to show bias. The statements are therefore not hearsay.

2. Alleged statements from AFI selector Bianca Arnold's male co-workers that women "do not last in the warehouse" and "PFG does not like to hire females." (SOF ¶ 76; ECF 237-38, EEOC Ex. 78, Arnold Decl. ¶ 4).

The statement that women "do not last in the warehouse" is not offered to prove the truth of the matter asserted but is offered to show bias. Therefore, that statement is not hearsay.[12] The statement "PFG does not like to hire females" is offered for the truth of the matter asserted, and it does not appear that the male co-workers had any hiring power or made the comment within the scope of their employment. Therefore, that statement is hearsay and the court will strike it.

3. An email from Dan Gorsuch to Dwight Gorsuch, dated April 18, 2005, which states that "[y]our brother Steve [Gorsuch] walks around pinching girls and telling women he wont [sic] hire them." (SOF ¶ 90; ECF 238-14, EEOC Ex. 94).[13]

---

therefore the court will not discuss these statements: Cherese Jenkins (SOF ¶ 81); Deborah Harris (SOF ¶ 82); Mona Fondren (SOF ¶ 83); Rose Atkins (SOF ¶ 84); Lowanda Hamilton (SOF ¶ 85); Peggy Arceneaux (SOF ¶ 86); Anna Johnson (SOF ¶ 97); Cassandra Price (SOF ¶ 100); Michelle Hodge (SOF ¶ 103); Cynthia Brewer (SOF ¶ 104); Cheryl Brown (SOF ¶ 105); Christy Rivera (SOF ¶ 106); Kandies-Crystal Canfield (SOF ¶ 107); Ashley Maljevac (SOF ¶ 108); Brandi Grayson (SOF ¶ 113); Sandra Needham (SOF ¶ 114); Nevetta Todd (SOF ¶ 115); Ladonna Womack (SOF ¶ 116); Roberta Martinez (SOF ¶ 117); Sabrina Witherspoon (SOF ¶ 119); Melody Sholunas (SOF ¶ 120); Tausha Jackson (SOF ¶ 123); Hattie Wilson (SOF ¶ 124); Magnolia Doerr (SOF ¶ 126); and Cindy Patrick (SOF ¶ 127).

[11] CCF is one of the OpCos.

[12] As PFG does not object to this statement on the basis of relevance, the court will not decide its relevance at this time. *See Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 198 (E.D. Va. 2010) (non-decisionmaker's bias not relevant to the ultimate question of whether employer imposed discriminatory discipline).

[13] Steve Gorsuch was a router at CCF. (EEOC SOF ¶ 90; PFG's Responses ¶ 90). It appears from the signature lines in the email that Dan Gorsuch was information technology manager at CCF and Dwight Gorsuch was president at CCF. (Ex. 94, Gorsuch email). It is not clear whether Steve Gorsuch was in a position of authority or involved in hiring.

It appears that PFG seeks to strike the part regarding Steve telling women he would not hire them. The EEOC argues that this is a statement of independent legal significance. Stating an intention to not hire women is not hearsay, because it is a "direct expression of discriminatory intent by an employer, which is illegal, [and] is an utterance of independent legal significance, regardless of its truth." *Nyonka v. MVM, Inc.*, No. PWG-15-645, 2016 WL 4240290, at *5 (D. Md. Aug. 11, 2016). In its reply, PFG argues that even if some of the challenged statements are of independent legal significance, they are still conveyed via hearsay, (Reply at 7), but does not specifically discuss whether Dan Gorsuch's email is hearsay. It is not clear how Dan Gorsuch learned of Steve Gorsuch's statements or whether any hearsay exception applies to Dan Gorsuch's email. As the parties do not brief the issue, the court will not decide the admissibility of the email at this time, and only decides that Steve Gorsuch's alleged statements have independent legal significance and are not hearsay.

4. CCF selector Rebecca Lehr's testimony that her interviewer told her "we don't normally interview women" and that after she was hired her supervisor made comments about how "females weren't fast enough and couldn't lift" and male coworkers would talk about how women did not belong in the warehouse environment. (SOF ¶ 92; ECF 238-16, EEOC Ex. 96, Lehr Depo. at 42:19–44:17, 66:25–69:13, 70:3–71:1).

5. CCF selector Bridget Psathas's declaration that during her interview the supervisor told her that "his higher ups did not usually hire females, and there was only one other female working as a selector." (SOF ¶ 93; ECF 238-17, EEOC Ex. 97, Psathas Decl. ¶ 3).

The statements made by the interviewers are "by the party's agent or employee on a matter within the scope of that relationship and while it existed," and are not hearsay under Rule 801(d)(2)(D). In *EEOC v. LA Weight Loss*, the court found that statements by unidentified hiring officials to male applicants that they would not be hired because of their sex were admissible as party admissions, because "the applicants' depositions indicate that the declarants were involved

in screening or interviewing applicants, making it reasonable to conclude that LAWL hiring practices were within the scope of the declarant's employment." 509 F. Supp. 2d 527, 534 (D. Md. 2007). Here, Lehr's deposition and Psathas's declaration indicate that the declarants were involved in interviewing applicants, (Lehr Depo. at 43:4–44:7; Psathas Decl. ¶ 3), so it is reasonable to conclude that PFG's hiring practices were within the scope of the declarants' employment.[14] Therefore, these statements are not hearsay.

The statement that "females weren't fast enough and couldn't lift" and women did not belong in the warehouse are not offered for the truth of the matter but to show bias. Therefore, these statements are not hearsay.[15]

> 6. CCF receiving clerk Lesa Becker's declaration that CCF warehouse managers Matthew Free and Ed Geelhaar often made comments about how they did not want to hire female selectors for the evenings because they couldn't handle the lifting requirements and how they wanted to get rid of a female will-call picker who operated a forklift.[16] (SOF ¶ 94; EEOC Ex. 98, Becker Decl. ¶¶ 4, 8).

These alleged statements by Free and Geelhaar regarding not hiring female selectors and wanting to fire a female will-call picker are statements within the scope of their employment, because their job positions[17] and statements indicate that hiring and firing employees was within

---

[14] *Hassman v. Caldera*, 229 F.3d 1142 (Table), 2000 WL 1186984, at *2 (4th Cir. 2000), is distinguishable. In *Hassman,* the Fourth Circuit found that the plaintiff "was unable to produce any independent evidence showing that the scope of Major Zeleznik's authority included any matters related to Hassman's employment" so that alleged statements that Zeleznik made about Hassman's employment were inadmissible hearsay. Here, the testimony regarding the declarants' roles in interviewing Lehr and Psathas is independent evidence that they were involved in hiring. Even if they were not the final decisionmakers, the evidence shows that they had a "palpable" involvement in the hiring process. *See EEOC v. Watergate at Landmark Condo.*, 24 F.3d 635, 640 (4th Cir. 1994).

[15] Some of these comments were made by coworkers. As stated in note 12, *supra*, the court does not decide the relevance of discriminatory statements made by coworkers at this time.

[16] It does not appear that PFG seeks to strike the part of Becker's declaration where she states that Free and Geelhaar transferred her from the warehouse into the accounting department, because Free and Geelhaar's action is not a "statement."

[17] The EEOC represents in its statement of facts that Free and Geelhar were warehouse managers. Becker's declaration, however, does not state that Free and Geelhaar were warehouse managers, but instead that they were her supervisors. An excerpt from Free's deposition (ECF 240-9, EEOC Ex. 169), attached to the EEOC's motion for summary judgment, indicates that Free at one point was warehouse manager and while he was warehouse manager he was involved with interviewing selectors. (Free Depo. at 84:12–24). Additionally, PFG's revised supplemental responses to plaintiff's first set of interrogatories, attached to the EEOC's motion for summary judgment, states that

the scope of their employment. The statements also have independent legal significance as statements of discriminatory intent. Additionally, statements that women could not handle the lifting requirements are not hearsay because they are offered to show bias, not to prove the truth of the matter asserted.

**B. Documents from Various EEOC Investigative Files**

PFG also seeks to strike two exhibits to the EEOC's motion for summary judgment, Gardner's May 2007 Rebuttal Letter (ECF 238-15, Exhibit 95) and Geib's March 23, 2007, Letter (ECF 237-24, Exhibit 64), which were submitted to the EEOC as part of individual discrimination complaints.

1. Gardner's May 2007 Rebuttal Letter

This rebuttal appears to have been sent to the EEOC by Kyle Gardner as part of his own allegation of discrimination or retaliation against PFG. (ECF 238-15 at 7, EEOC Ex. 95; ECF 239-39, EEOC Ex. 159[18]). Included in the rebuttal sent to the EEOC was a letter addressed "To Whom it May Concern" in which Gardner recounted discriminatory comments made by Dan Peckskamp, Dave Russ, and Jeff Wismans, and stated that Russ and Wismans admonished Gardner for hiring women. (*Id.*). PFG argues that the rebuttal letter is hearsay. The EEOC argues that since the statements in the letter were adopted by Gardner in his deposition, the statements are not hearsay.

The advisory committee notes to Rule 801 for the 1972 proposed rules state that, "[i]f the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem." Notes on Advisory Committee on Proposed Rules, Subdivision (d)(1). "[A] witness's reference to the prior statement need not be so specific as to

Geelhaar may have made a decision regarding the application of Ernestine Brandon, indicating that he had hiring authority. (ECF 240-8 at 3, EEOC Ex. 168).
[18] PFG also seeks to strike Exhibit 159, which is just the last page of Exhibit 95.

require each and every question of a prior deposition or every sentence of a prior statement to be reiterated by the witness during testimony. A more general incorporation is permitted." *BCCI Holdings (Luxembourg), Societe Anonyme v. Khalil*, 184 F.R.D. 3, 6–7 (D.D.C. 1999) (citations omitted); *see also Estate of Anderson v. Strohman*, No. CIV.A. GLR-13-3167, 2015 WL 4920313, at *2 (D. Md. Aug. 14, 2015) ("to incorporate a prior statement into present testimony, a witness must have personal knowledge of the matters addressed by the prior statement such that he is available for cross-examination on his incorporated statements.").

The court finds that Gardner has adopted the letter regarding gender discrimination so it is not hearsay. In his deposition, in which Gardner was presumably available for cross-examination by PFG, Gardner testified that "I wrote this on behalf of the women that worked there who was [sic] definitely being treated unfair. And I witnessed this myself." (ECF 286-3, Opp'n to Mot. to Strike, Ex. 3, Gardner Depo. at 52:8–10). Here, Gardner testified he has firsthand knowledge of the events in his letter, and has generally adopted the statements in the letter by stating that he wrote it and reiterating that he "witnessed this myself."[19]

The letter also contains other statements, that must themselves either be non-hearsay or fall under an exception to the hearsay rule, in order to be admissible. In the letter, Gardner recounted several statements: Dan Peckskamp asking "Why do you guys have females working in the [w]arehouse?"; Dave Russ stating that Peckskamp was upset that there were women working in the warehouse and telling Gardner to get rid of them; other statements to Gardner to fire female workers; and Jeff Wismans stating "You know what Dan said about hiring women."

As to the statements directing Gardner to fire female workers, they are not offered for the truth of the matter. Rather, "their significance lies in the actual making of the statement" and are

---

[19] The court does not decide whether the letter is admissible at trial, but for summary judgment the court can rely on its contents because Gardner can testify to it.

offered "for the purposes of proving the fact of the instruction or command." *Planmatics, Inc. v. Showers*, 137 F. Supp. 2d 616, 621 (D. Md. 2001), aff'd, 30 F. App'x 117 (4th Cir. 2002); *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 566 (D. Md. 2007) (statements that are questions or imperative commands are not hearsay because they are not offered to prove the truth of the assertions). Similarly, Peckskamp's question regarding why women were working in the warehouse is a question also not offered to prove the truth of its assertion, but instead to show Peckskamp's discriminatory attitude.

As to the statements regarding Peckskamp's disfavor towards women workers, these are offered to prove the truth of the matter. According to Gardner, these statements were made by Dave Russ and Jeff Wismans. Dave Russ was a regional vice president of operations, (EEOC's SOF ¶ 21; PFG's Responses to SOF ¶ 21), and Jeff Wismans was CCF's vice president of operations, (EEOC's SOF ¶ 23; PFG's Responses to SOF ¶ 23). Peckskamp was PFG's vice president of operations. (EEOC's SOF ¶ 14; PFG's Responses to SOF ¶ 14). A statement is admissible if it is "offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Here, it appears that Russ and Wismans had supervisory authority over Gardner, particularly regarding his hiring and firing of warehouse positions, and Peckskamp had supervisory authority over Gardner and Wismans. Therefore, these statements were made by PFG's employees within the scope of their employment, and are admissible.[20]

Gardner, however, did not adopt the rest of the rebuttal submitted to the EEOC in his deposition, which concerns allegations of race discrimination. Neither party focuses on these

---

[20] PFG argues that even if Gardner adopted the statement that Gardner was ordered to fire a female employee, this would "only have the effect of curing any hearsay issues pertaining to the statement itself. It would not cure the hearsay issues pertaining to the document." (ECF 291, Reply in Supp. of Mot. to Strike at 10). As stated above, the alleged comments by Russ, Peckskamp, and Wismans are either not offered for their truth or are party admissions. As to the letter, Gardner has sufficiently adopted its contents during his deposition.

pages of the rebuttal, as they do not appear relevant to allegations of gender discrimination.  It appears the EEOC provided them only as context for the final page of the rebuttal, which is the letter concerning gender discrimination.  To the extent the EEOC seeks to use the first six pages, though, they were not adopted and are inadmissible hearsay.

2. Geib's March 23, 2007, letter

The March 23, 2007, letter written by Jason Geib,[21] who was a warehouse manager at CCF, is addressed "To Whom it May Concern" and supports Julie Lawrence for the position of supervisor, states that management at CCF discriminates against females, and recounts discriminatory comments said by Dave Russ and Dan Peckskamp.  (EEOC Ex. 64, Geib's letter).  PFG argues the letter is hearsay, and the EEOC argues that it was adopted by Geib in his deposition.

Geib did not adopt the March 23, 2007, letter in his deposition, as he did not reaffirm during his deposition that the entire contents of the letter were true.  With regard to a statement made by Dave Russ regarding "If you want to stay on Dan Pecks[k]amp's good side, you need to get all these females out of here," which was recounted in the letter, Geib stated during his deposition that he did not recall Russ saying this.  (ECF 286-5, Opp'n to Mot. to Strike, Ex. 5, Geib Depo. at 149:14–16).[22]  Therefore, the court finds that Geib did not sufficiently adopt the entire letter, and the court will strike Geib's letter, Exhibit 64 to the EEOC's motion for summary judgment.

**C.  Documents from *Geib v. PFG***

---

[21] It appears, from the other exhibits discussed *infra* that Geib filed a lawsuit against PFG alleging retaliation in violation of Title VII.  It is not clear if this letter is part of his lawsuit.

[22] As to another statement by Russ, "You need to get these females out of here . . . ," Geib recalled Russ saying it but did not recall when.  (*Id.* at 149:22–25).  PFG does not request that Geib's deposition testimony, including deposition testimony about statements contained in the letter, be stricken, and the court does not decide that.

PFG seeks to strike two documents from a separate lawsuit filed by Jason Geib against PFG: the complaint, (ECF 237-22, Ex. 62), and the memorandum opinion denying summary judgment, (ECF 237-27, Ex. 67[23]).

1. Complaint

The EEOC cited to a complaint from a separate lawsuit filed by Jason Geib against PFG in order to support the allegation that "During this November 2006 visit, Peckskamp expressed his displeasure with the hiring of females in the warehouse by indicating they would slow down the operation and explaining it would be a good idea to get the 'females out of here.'" (SOF ¶ 64). To the extent that the EEOC wishes to introduce Peckskamp's displeasure and statement to get females out of the warehouse, it may cite to Geib's deposition testimony. Geib does not, however, adopt his whole complaint in the deposition, at least based on the excerpts provided by the EEOC. (*See* Opp'n to Mot. to Strike, Ex. 5, Geib Depo.). Therefore, the court will strike Geib's complaint, Exhibit 62 to the EEOC's motion for summary judgment.

2. Summary Judgment Opinion in *Geib v. PFG*

The EEOC submitted the summary judgment opinion in *Geib v. PFG* for the following assertions: "Russ and Peckskamp told Warehouse Manager to remove female employees from the warehouse," (SOF ¶ 64), and "In February 2007, PFG advertised internally and externally for a Night Warehouse Training Supervisor position at its Carroll County facility," (SOF ¶ 135). In the summary judgment opinion, the court noted that it was viewing the facts in the light most favorable to the nonmoving party, as the court must do on a motion for summary judgment. (*See* Opinion, *Geib v. PFG*). Therefore, the court finds it is not appropriate to use factual statements in that memorandum opinion to determine facts in this case, especially as to the EEOC's motion for summary judgment, for which facts must be viewed in the light most favorable to PFG.

[23] The memorandum opinion is also Exhibit 144 to the EEOC's motion for summary judgment. (ECF 239-24).

### D. Non-PFG Emails

PFG argues that two exhibits to the EEOC's motion for summary judgment, an August 19, 2013, email from Cristina Goulart, (ECF 237-31, EEOC Exhibit 71), and an April 14, 2014, email from Carlene Gardner, (ECF 238-37, EEOC Exhibit 117), are inadmissible hearsay.

#### 1. Cristina Goulart's August 19, 2013, Complaint of Harassment Email

This is an email from Cristina Goulart to someone at Action Staffing Agency regarding harassment during her employment at one of the OpCos, AFI.[24] The EEOC uses this email as support for the assertion that "[o]ne of the managers hired instead of [Jennifer] Irby in 2013 was Anthony Hightower, a known alleged sexual harasser." (SOF ¶ 67). PFG argues that the email is hearsay and not relevant. The EEOC argues that it falls under the business records exception, since it was sent by Goulart to her staffing agency and kept in the regular course of business, and that it is relevant. PFG did not respond to the business records argument in its reply.

> A record of an act, event, or opinion is not hearsay if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) making the record was a regular practice of that activity;
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
> (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). The EEOC has attached a certification by Mark H. Weiss, the CEO of Action Staffing Agency, which certifies that the records provided in response to the EEOC's subpoena are "true and accurate copies of the original that were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with

---

[24] Goulart sometimes refers to the OpCo as "IFA" which appears to be a typo.

knowledge of those matters; were kept in the course of the regularly conducted activity; and were made by the regularly conducted activity as a regular practice by Action Staffing Agency." (ECF 286-2, Opp'n to Mot. to Strike, Ex. 2, Certification by M. Weiss). PFG does not dispute this or show a lack of trustworthiness. Therefore, it appears the exception is met.

PFG also argues that the email is not relevant, because it does not regard the hiring of women. It appears that Anthony Hightower became a night warehouse manager at some point after 2015. (ECF 237-29, Mot. for Summary Judgment, Ex. 69, Jennifer Irby Depo. at 28:6–8 (hired Hightower when Irby came back from disability); 24:13–14 (went on disability in June 2015)). It appears that at the time of Goulart's email, Hightower was the assistant manager. (Goulart's email). Although it is not clear if Hightower was a decisionmaker for the hiring of warehouse operative positions, the email appears relevant.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. In an individual age discrimination case, the Supreme Court stated that "[t]he question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008). Here, the EEOC must show a pattern or practice of employment discrimination with respect to hiring operatives. Although it is not clear whether Hightower had any role in hiring operatives during the period in question, the allegations that he sexually harassed an employee may be relevant to the motives and biases of supervisors at the AFI warehouse while the alleged gender discrimination in hiring was occurring. Therefore, the court will not strike the email and will consider it in connection with summary judgment.

2. Gardner's April 14, 2014, complaint email

This is an April 14, 2014, email from Carlene Gardner[25] regarding derogatory remarks made about her by her coworker, Calvin Russell, to her supervisor Brian Bunting, on October 25, 2013. (ECF 238-37, EEOC Ex. 117, Gardner's complaint email). It appears Carlene Gardner made the statement based on a request from PFG, and then sent a copy to her private email and to her fiancée. (ECF 286-4, Opp'n to Mot. to Strike, Ex. 4, Carlene Gardner Depo. at 61:3–62:7). Bunting reported the remarks to his supervisors. (Gardner's complaint email). After reporting the incident, Bunting asked Gardner if anyone had spoken to her about it, and Gardner said no; later, she contacted Mo Aman, whose position is unclear. (*Id.*). Gardner later spoke with Matt Lowrey, whose position is also unclear, who said he would investigate. (*Id.*). Russell was terminated on November 5, 2013, and Bunting was terminated a day later. (*Id.*). The EEOC uses this email to support that in "October 2013, Gardner heard one worker, Calvin Russell, refer to her as a dyke and n****r to supervisor Brian Bunting." (SOF ¶ 112).

The email is hearsay and not admissible. First, Gardner did not adopt the contents of the email in her deposition. During her deposition, she retrieved the email from her car, (Carlene Gardner Depo. at 60:4–10), stated that she had the same or similar statement notarized, (*id.*at 60:19–61:12), and described drafting the statement, (*id.* at 62:3–13). She did not, at least in the excerpt provided by the EEOC, say that the email was truthful or otherwise adopt its contents during her deposition. Second, although Gardner stated that she got another version of the statement notarized, any notarized version of the statement that might exist was not submitted by the EEOC, and Gardner could not remember if the version of the statement she notarized was exactly the same as the version sent in the email. (*Id.* at 60:19–61:12). Finally, even if she made the statement at the direction of PFG, it was not kept in the course of a regularly conducted

---

[25] Carlene Gardner's position is not clear. It appears she worked in an operative position at one of the OpCos.

activity, because this email was sent from Gardner's personal email address to herself and her fiancé, and presumably was kept either in Gardner or her fiancé's personal email accounts. Therefore, the court will strike the email.[26]

## CONCLUSION

For the reasons stated above, the court will grant in part and deny in part PFG's motion to strike. Specifically, the court will strike 1) the declarations and testimony of the non-designated class members; 2) the statement in Bianca Arnold's declaration (EEOC's motion for summary judgment, Exhibit 78) that "PFG does not like to hire females"; 3) Exhibit 64, Geib's March 23, 2007, letter; 4) Exhibit 62, the complaint in *Geib v. PFG*; 5) Exhibits 67 and 144, the summary judgment opinion in *Geib v. PFG*; and 6) Exhibit 117, Carlene Gardner's email. For the statements and exhibits the court does not strike, it only decides that they are admissible for the purposes of the summary judgment motions, not that they will necessarily be admissible at trial. A separate order follows.

_____3/18/20_____                                    _____/s/_____
Date                                                                Catherine C. Blake
                                                                    United States District Judge

---

[26] PFG does not ask that Carlene Gardner's deposition testimony, including testimony regarding the incident described in the email, be stricken, and the court does not decide that.